UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHELLE FELIX, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:20-cv-00683 |
| | § | |
| MARY KAY, INC., | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW Michelle Felix, Plaintiff in the above-styled and numbered cause ("Plaintiff"), and files this, her Original Complaint against Mary Kay, Inc. ("Defendant" or "Mary Kay"), and in support thereof would respectfully show the Court the following:

## I.
## THE PARTIES

1.1   Plaintiff is an individual residing in Dallas County, Texas, at all relevant times related to this cause of action.

1.2   Mary Kay is a corporation organized and existing pursuant to the laws of the State of Texas. The address of Mary Kay's principal place of business is: 16251 Dallas Parkway, Dallas, Texas 75379-9045. Mary Kay may be served with process by serving its registered agent, CT Corporation System, at: 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. Mary Kay is being sued in its name and own right as the former employer of Plaintiff under the Family Medical Leave Act (the "FMLA") and the Fair Labor Standards Act (the "FLSA").

# II.
# JURISDICTION AND VENUE

2.1 This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which vests original jurisdiction upon this Court for actions arising under the laws of the United States (federal question), 28 U.S.C. § 1337(a), which vests original jurisdiction in this Court for actions under the FLSA (as "arising under any Act of Congress regulating commerce"), 29 U.S.C. § 216(b) (FLSA), and 29 U.S.C. § 2617(a) (FMLA).

2.2 This Court has in personam jurisdiction over Defendant because it is organized and existing pursuant to the laws of the State of Texas, and it is located and doing business in the State of Texas.

2.3 Venue lies in this judicial district, pursuant to 28 U.S.C. § 1391, because it is the judicial district in which Defendant's principal place of business is located and in which a substantial part of the events or omissions giving rise to the claim(s) occurred.

# III.
# FACTUAL BACKGROUND

**A.** *Plaintiff's Career at Mary Kay, Inc.*

3.1 Mary Kay initially hired Plaintiff on or about August 12, 2002. Prior to Mary Kay's wrongful discharge and/or termination of Plaintiff on or about September 3, 2019, Plaintiff had been an employee at Mary Kay for approximately seventeen (17) years. At the time of her wrongful discharge and/or termination, Plaintiff's title with Mary Kay was "Specialist, Corporate Social Responsibility" at the Mary Kay Foundation (the "Foundation"). Plaintiff was the second most tenured employee on her team and only three (3) years away from benefitting from Mary Kay's early retirement program. Plaintiff valued her employment with Mary Kay, and during her employment, she produced high quality work for which she was commended on several occasions.

3.2     The Foundation is Mary Kay's non-profit branch whose main function is to raise money for multiple charities through various annually recurring fundraising events. The Foundation relies almost entirely on volunteers, which are mostly Mary Kay employees, to execute these events. Accordingly, Plaintiff's position at the Foundation required her to support some, but not all, of these events by contributing to event planning and logistics, supporting employee engagement initiatives, and providing on-site labor when needed.

3.3     Although Mary Kay employed Plaintiff at the time of its wrongful discharge and/or termination of Plaintiff, as Plaintiff remained under Mary Kay's payroll system, Mary Kay created the "Specialist, Corporate Social Responsibility" position specifically for Plaintiff at the Foundation in or around February 2019. Mary Kay allegedly eliminated Plaintiff's position when it wrongfully discharged and/or terminated Plaintiff. Prior to this time, Mary Kay never informed Plaintiff that was going to eliminate her position, much less end her long-standing employment with Mary Kay.

**B.     *Mary Kay's Retaliation for Plaintiff Taking FMLA Leave***

3.4     On or about July 17, 2019, Plaintiff severely injured her left foot, suffering multiple fractures. Despite her injury, Plaintiff performed her job duties to the best of her ability during the five (5) days that she was present for Mary Kay's annual seminar conference.

3.5     Subsequently, on or about July 24, 2019, Plaintiff went to her physician for a follow-up appointment where Plaintiff's left leg was put into a cast up to her knee and her physician recommended that she take time off of work to rest and recover.

3.6     Accordingly, on or about July 28, 2019, Plaintiff conferred with her supervisors, Kelley Medley and Madeline Littrell, in order to request leave to work remotely from home for two weeks to facilitate her recovery. Although Mary Kay ignored her request, as Plaintiff received

no response from her supervisors, Plaintiff worked remotely from home the following day, July 29, 2019, without any issue.

3.7    On or about July 30, 2019, Ms. Medley finally replied to Plaintiff and denied her request for a reasonable accommodation to work remotely from home. Ms. Medley also directed Plaintiff to consult Mary Kay's insurance company, Unum, about taking short-term leave and/or requesting a work accommodation.

3.8    On or about August 13, 2019, Plaintiff was approved for both FMLA leave ("FMLA Leave") and Short-Term Disability leave ("Short-Term Disability Leave") (FMLA Leave and Short-Term Disability Leave are collectively referred to herein as "Medical Leave"), from approximately or about July 30, 2019 through August 18, 2019.

3.9    On or about August 19, 2019, Plaintiff returned from her Medical Leave to a vastly different work environment. After being met with a cold reception from her co-workers, Ms. Littrell sent a callous and demanding e-mail with itemized tasks and dates, micromanaging Plaintiff's entire week, without any conversation for workload planning and balancing, which was in stark contrast to Ms. Littrell's behavior prior to Plaintiff's Medical Leave. Plaintiff also learned from this e-mail that she was being removed from her leadership roles in various planned events and that she was being reassigned to supportive roles for other events, which were already months into planning and for which she had not been previously involved prior to her Medical Leave. This reassignment required Plaintiff to learn new systems and processes, evaluate more than 1,000 volunteer applications, and recruit and train volunteers. Plaintiff no prior experience handling such tasks, yet Ms. Littrell required her to have everything done within one and one-half days.

3.10    Understandably, Plaintiff was overwhelmed by the sheer volume of work that Ms. Littrell expected her to accomplish within an unreasonably short time frame. When Plaintiff

inquired about these sudden and unexpected changes, Ms. Littrell accused her of mistreating volunteers at Mary Kay's seminar conference and alleged this accusation served as her purported reason for removing Plaintiff from her prior leadership positions. Ms. Littrell's comments came as a complete surprise to Plaintiff, as she had worked diligently to create an improved volunteer experience at the conference, despite suffering through the pain of her injury. Of great concern to Plaintiff was the fact that Ms. Littrell never asked Plaintiff for her side of the story.

3.11    Plaintiff believed that she was being retaliated against by Mary Kay due to her injury and her Medical Leave, which she took simply to recover from her injury. Accordingly, on or about August 20, 2019, Plaintiff brought her concerns to Mary Kay's Human Resources Generalist, Tina Boehnlein. Plaintiff met with Ms. Boehnlein in person, and she informed Ms. Boehnlein that she believed Ms. Littrell was punishing her with new and unrealistic expectations because of her injury and her subsequent Medical Leave. Ms. Boehnlein recommended that Plaintiff connect with her director, Ms. Medley.

3.12    After meeting with Ms. Boehnlein, Plaintiff promptly reached out to Ms. Medley; however, Ms. Medley was noticeably slow to respond to Plaintiff. Additionally, Plaintiff forwarded the harsh and unwelcoming communications from Ms. Littrell to Ms. Boehnlein, and Plaintiff reiterated, in writing, that she felt that she was being targeted and retaliated against for sustaining an injury and taking her Medical Leave. Subsequently, to Plaintiff's knowledge, neither Ms. Medley nor Ms. Boehnlein did anything to remedy and/or investigate Plaintiff's concerns or situation.

3.13    Plaintiff's situation at Mary Kay deteriorated further over the next two weeks. Ms. Littrell began excluding Plaintiff from team meetings, and Plaintiff's co-workers, with whom Plaintiff had once been very close, became noticeably distant, unfriendly, and blatantly avoided

her around the office. Plaintiff also developed significant anxiety because she had been received with hostility and harassment upon her return from her Medical Leave and because her supervisors were attempting to setup her up for failure with unreasonable deadlines and were micromanaging her in a way that she had never experienced prior to her injury and her Medical Leave.

3.14 Despite these conditions, Plaintiff continued to perform her job to the best of her abilities and to the detriment of her health, both mentally and physically. Specifically, Plaintiff was forced to revisit her physician due to extreme pain in her hip caused by an unusually mobile day at work on or about August 30, 2019. Even though Plaintiff was still wearing a protective boot on her injured foot, she was required to perform labor-intensive work, for which she received no help from her now-distant colleagues. A subsequent visit with her physician revealed a new injury to Plaintiff's hip caused by overcompensation for her injured foot while performing the labor-intensive work. The physician ultimately allowed Plaintiff to return to work with work restrictions.

3.15 On or about September 3, 2019, Plaintiff returned to work and submitted her medical documentation, which explained her doctor-imposed work restrictions to Mary Kay and Plaintiff's supervisors; however, rather than address Plaintiff's request for accommodation, Mary Kay wrongfully discharged and/or terminated her.

3.16 Additionally, at the time of Mary Kay's wrongful discharge and/or termination of Plaintiff, Ms. Littrell piled on by lodging several unfounded allegations against Plaintiff, which Ms. Littrell had never previously raised to Plaintiff.

3.17 To begin with, Ms. Littrell alleged that Plaintiff had been an "underperformer for some time now" and that she had not met deadlines on a regular basis. Contrary to this unfounded allegation, Plaintiff had never received any previous complaints about her performance.

Moreover, Ms. Littrell had praised Plaintiff's work performance leading up to Mary Kay's seminar conference in July 2019.

3.18 Second, Ms. Littrell alleged that no less than ten (10) volunteers from Mary Kay's seminar conference had come forward to complain that Plaintiff had mistreated them during the conference *and* at other events. Ms. Littrell went so far as to say that volunteerism was at an "all-time low" because of Plaintiff. Once again, contrary to this unfounded allegation, Ms. Littrell had previously praised Plaintiff's efforts to improve the volunteer experience that year.

3.19 Third, Ms. Littrell alleged that Plaintiff broke leadership's trust in her by taking advantage of her position and authority. Specifically, Ms. Littrell accused Plaintiff of providing two organizations with unauthorized donations and receiving special compensation from vendors. Contrary to this unfounded allegation, to Plaintiff's knowledge, Ms. Littrell had previously approved these donations. Moreover, Plaintiff never received any compensation or gifts from any vendor or organization in violation of Mary Kay's corporate policy.

3.20 Finally, Ms. Littrell alleged that Plaintiff used company iPads for personal use during Mary Kay's seminar conference; however, these company iPads, which served as the basis of this allegation, were not even properly configured or credentialed, and Plaintiff had to find a solution in order for these company iPads to be used for their intended purpose at the conference.

C. *Unpaid Overtime Hours*

3.21 In an attempt to avoid paying Plaintiff compensation for overtime otherwise due to Plaintiff over the past six (6) years, Mary Kay classified Plaintiff as an "exempt" employee. Despite Mary Kay's improper classification, Plaintiff was not exempt from the applicable overtime pay requirements according to the FLSA. During the applicable six (6) years, Plaintiff

conservatively estimates that she has worked 3,120 overtime hours for which she never received compensation from Mary Kay, as required by the FLSA.

3.22   Additionally, Mary Kay's conduct and treatment of Plaintiff demonstrates a policy, pattern, practice, custom, and/or history of discrimination and/or retaliation, of which Plaintiff was a victim. Since the time that Ms. Littrell and/or Ms. Medley began their retaliation against Plaintiff, Mary Kay knew or should have known of such behavior, as Plaintiff lodged complaints and sought corrective actions; however, despite Plaintiff's efforts, Mary Kay failed to take prompt remedial action, and instead, Mary Kay attempted to resolve the issue by wrongfully discharging and/or terminating Plaintiff based upon fabricated and unfounded allegations, as noted above. Specifically, Mary Kay ignored the mandates of 29 U.S.C. § 2615(a)(1), by interfering with Plaintiff's exercise of her rights under the FMLA, and 29 U.S.C. § 207(a)(1), by failing to pay Plaintiff the overtime compensation that Mary Kay was responsible for paying to her pursuant to the FLSA.

3.23   Mary Kay's conduct resulted in harm to Plaintiff, and such conduct constitutes unlawful employment practices, which has adversely affected Plaintiff's employment and injured and/or damaged her.

## IV.
## CAUSES OF ACTION

4.1   **Alternative Pleadings**.  To the extent necessary, each of the claims set forth below is pleaded in the alternative.[1]

---

[1] Plaintiff has exhausted and/or attempted to exhaust any and all necessary administrative remedies, or in the alternative, such administrative remedies are useless to pursue and/or have been rendered useless to pursue by Defendant.

A.  **Count One:**

**Violation(s) of the Family Medical Leave Act: Retaliation**

4.2     To the extent necessary, Paragraphs 1.1 through 4.1 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

4.3     Plaintiff is not required to exhaust her administrative remedies before pursuing a claim under the FMLA. *See Roth v. Canon Sols. Am., Inc.*, 2019 WL 4597583, at *5 (N.D. Tex. Sept. 23, 2019) (noting that the defendants' affirmative defense that the plaintiff failed to timely file an EEOC charge and properly exhaust his administrative remedies would not bar the plaintiff's FMLA claim).

4.4     Plaintiff can establish a prima facie case of prohibited retaliation under the FMLA by demonstrating the following elements: (1) she was protected under the FMLA; (2) she suffered an adverse employment action (i.e., wrongful discharge and/or termination); and (3) she was treated less favorably than an employee who had not requested leave under the FMLA, or the adverse decision was made because she sought protection under the FMLA.

4.5     Plaintiff exercised her rights under the FMLA by taking Medical Leave for three (3) weeks, which was reasonable in light of her injury and treatment for that injury, and Plaintiff was protected under the FMLA because she was an eligible employee at the time that she took her Medical Leave. Plaintiff was employed: (1) for at least 12 months by Mary Kay, which is the employer with respect to whom leave was requested under 29 U.S.C. § 2612(a)(1)(D); and (2) for at least 1,250 hours of service with Mary Kay during the previous 12-month period. *See* 29 U.S.C. § 2611(2)(a); *see also* 29 U.S.C. § 2612(a)(1)(D) ("[A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . because of a serious health condition that makes the employee unable to perform the functions of the position of such

employee."). Furthermore, as stated above, Plaintiff had a serious health condition involving continuing treatment by a health care provider. *See* 29 U.S.C. § 2611(11)(b); *see also* 29 C.F.R. §§ 825.113, 825.115, 825.123.

4.6 Plaintiff suffered an adverse employment action by Mary Kay because, pursuant to 29 U.S.C. § 2615(a), it is a prohibited act to: (1) "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" Subchapter I of the FMLA; and (2) "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by" Subchapter I of the FMLA. 29 U.S.C. § 2615(a)(1)-(2); *see also* 29 C.F.R. § 825.220(a)(1)-(2). As soon as Plaintiff returned from exercising her rights under the FMLA by taking her Medical Leave, Mary Kay interfered with, restrained, and/or denied Plaintiff from her right to return from her Medical Leave to her position with equivalent terms and conditions of employment. *See* 29 U.S.C. § 2614(a). Then, when Plaintiff reported the unlawful conduct to Mary Kay's human resources department, Mary Kay wrongfully discharged and/or terminated her employment based upon fabricated and unfounded allegations.

4.7 Plaintiff was treated less favorably than other employees at Mary Kay who had not requested leave under the FMLA and/or the adverse decision was made (i.e., the termination) because Plaintiff sought protection under the FMLA. A causal link exists between Plaintiff's protected activity and her termination, as set forth above. For example, after Plaintiff reported her supervisor's unlawful conduct (i.e., retaliation for taking her Medical Leave under the FMLA) to Mary Kay's human resources department and sought corrective measures, Mary Kay terminated her employment (which also occurred after Plaintiff was attempting to return to work with reasonable accommodations after aggravating her injury due to the work required by Mary Kay upon her initial return to work).

4.8     As a result of the foregoing, Plaintiff has been injured and/or damaged, and Plaintiff hereby seeks to recover from Mary Kay any and all remedies afforded and/or available under law and/or in equity, including but not limited to her damages resulting from Mary Kay's wrongful conduct, in an amount to be proven and/or determined at the time of trial, equitable relief, and attorneys' fees and costs.

**B.    Count Two:**

**Violation(s) of the Fair Labor Standards Act**

4.9     To the extent necessary, Paragraphs 1.1 through 4.8 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

4.10    As set forth above, Mary Kay's conduct constitutes violations under the FLSA. Mary Kay is prohibited from employing Plaintiff for a work week longer than forty (40) hours without paying compensation for her employment "in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which [she] is employed." 29 U.S.C. § 207(a)(1).

4.11    Plaintiff can establish a prima facie case of unpaid overtime compensation against Mary Kay by a preponderance of the evidence of the following elements: "(1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due." *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019).

4.12    To begin with, Mary Kay employed Plaintiff from 2002 through 2019. From 2013 through 2019, Mary Kay failed to compensate Plaintiff for overtime that she worked. This Court applies the economic reality test to determine a party's status as an employer under the FLSA. *See*

*Carmack v. Park Cities Healthcare, LLC*, 321 F. Supp. 3d 689, 697-701 (N.D. Tex. 2018) (discussing each element to establish a prima facie case of an FLSA overtime violation). Under the economic reality test, this Court evaluates "whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id*. at 697 (citation and internal quotation marks omitted). As set forth above, Mary Kay meets all of these elements.

  4.13 Second, Plaintiff engaged in activities within the coverage of the FLSA during her employment with Mary Kay, as she engaged in commerce or in the production of goods for commerce and/or was employed in an enterprise (i.e., Mary Kay) engaged in commerce or in the production of goods for commerce. *See* 29 U.S.C. § 207(a)(1). Either individual or enterprise coverage is sufficient to meet this element. *See Carmack*, 321 F. Supp. 3d, at 698.

    a. *Individual Coverage*. The Fifth Circuit has applied the "practical test" to determine whether an employee's work "is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Mendoza v. Detail Sols., LLC*, 911 F. Supp. 2d 433, 439 (N.D. Tex. 2012) (quoting *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007)). The Supreme Court explained that the test is whether "the employee's activities . . . are actually in or so closely related to the movement of the commerce as to be a part of it." *Id*. at 439 (quoting *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943)). Plaintiff performed work in connection with the production of Mary Kay products and/or services for interstate commerce, including but not limited to: cultivating and/or maintaining relationships with Mary Kay's community partners both inside and outside of the state; supporting Mary Kay's interstate charitable campaigns, marketing efforts, and events; and supporting Mary Kay's interstate employee engagement and volunteerism initiatives. Additionally, Plaintiff was engaged in communicating messages, information, and/or reports to points outside the state, including but not limited to transmitting and/or preparing letters, magazines, and other papers which were sent to Mary Kay employees and community partners both inside and outside of the state.

b. *Enterprise Coverage.* The FLSA defines "enterprise engaged in commerce or in the production of goods for commerce" as one that "(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated." 29 U.S.C. § 203(s)(1)(A). Mary Kay is a corporation that sells cosmetics in interstate commerce.

4.14 Third, Mary Kay violated the FLSA's overtime wage requirements by, including but not limited to, mistakenly or willfully treating Plaintiff as "exempt" from the FLSA overtime requirements.

4.15 Fourth, the amount of overtime compensation due is $46,763.00 (for 1,040 overtime hours), if based on the two-year statute of limitations, or $70,144.00 (for 1,560 overtime hours) if based on three-year statute of limitations for willful violations. *See* 29 U.S.C. § 255.

4.16 As a result of the foregoing, Plaintiff has been injured and/or damaged, and Plaintiff hereby seeks to recover from Mary Kay any and all remedies afforded and/or available under law and/or in equity, including but not limited to her damages resulting from Mary Kay's wrongful conduct, in an amount to be proven and/or determined at the time of trial, equitable relief, and attorneys' fees and costs.

## V.
## REQUESTED RELIEF

5.1 Plaintiff seeks recovery of the full measure of and damages provided in the FMLA against Mary Kay, including but not limited to: (1) "wages, salary, employment benefits, or other compensation denied or lost to [Plaintiff] by reason of the violation;" or (2) "… any actual monetary losses sustained by [Plaintiff] as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks [. . .] of wages or salary for [Plaintiff]" in addition

to the interest on such amounts pursuant to 29 U.S.C. § 2617(a)(1). Additionally or alternatively, Plaintiff seeks liquidated damages and equitable relief. *Id.*

5.2    Plaintiff also seeks recovery of the full measure of and damages provided in the FLSA against Mary Kay, including but not limited to unpaid overtime compensation and/or liquidated damages, attorneys' fees, and court costs pursuant to 29 U.S.C.A. § 216(b) and 29 U.S.C.A. § 216(b).

5.3    Additionally, Plaintiff respectfully invites the Court's attention to 29 U.S.C. § 216(e)(2), which subjects Mary Kay's willful violation(s) of the FLSA to a civil penalty not to exceed $1,100 for each such violation. As such, Plaintiff requests this Court to make a finding of the number of Mary Kay's willful violations and to levy the applicable civil penalty against Mary Kay for the number of violations found.

## VI.
## FEES, COSTS, AND INTEREST

6.1    Plaintiff has retained The Michael Kim Law Firm, PLLC to represent her in connection with this matter, and she has agreed to pay for such reasonable and necessary services. In addition to and without waiving and/or limiting any other relief requested in this Complaint, Plaintiff is entitled to and seeks to recover from Mary Kay her reasonable and necessary attorneys' fees, costs, and any and all expert fees incurred and to be incurred in bringing this suit and in all appeals of this suit, as permitted by law, in equity, and/or pursuant to 29 U.S.C. § 2617(a)(3) and 29 U.S.C. § 216(b).

6.3    Additionally, Plaintiff seeks to recover costs of court, along with pre-judgment and post-judgment interest at the maximum rate permitted by law.

# VII.
# CONDITIONS PRECEDENT

7.1     All conditions precedent to the relief being sought by Plaintiff in this Complaint have been performed, have occurred, and/or have been waived.

# VIII.
# DEMAND FOR JURY TRIAL

8.1     Pursuant to the Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests trial by jury and will tender the requisite fee.

# PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon final hearing, Plaintiff recover judgment against Mary Kay and be awarded:

(1)     any and all amounts recoverable and/or recognizable as damages under law and/or in equity, resulting and/or occasioned by the wrongful acts and/or conduct of Mary Kay (as requested above);

(2)     equitable relief to the extent permitted by law and/or equity;

(4)     litigation expenses and costs, including but not limited to reasonable and necessary attorneys' fees and costs and any applicable expert fees;

(5)     pre-judgment and post-judgment interest at the maximum rate permitted by law;

(6)     costs of court; and

(7)     such other and further relief, both general and special, at law and in equity, to which Plaintiff may show herself to be justly entitled.

Respectfully submitted,

/s/ Michael Y. Kim
Michael Y. Kim
State Bar No. 24039960
mkim@mkimlegal.com
Ericha Ramsey Brown
State Bar No. 24051952
erbrown@mkimlegal.com

**THE MICHAEL KIM LAW FIRM, PLLC**
4236 W. Lovers Lane
Dallas, Texas 75209
(214) 357-7533
(214) 357-7531 Facsimile

ATTORNEYS FOR PLAINTIFF