UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHELLE FELIX, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:20-cv-00683-X |
| | § | |
| MARY KAY, INC. and THE MARY | § | |
| KAY FOUNDATION, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO ENTER JUDGMENT, AND BRIEF IN SUPPORT**

MICHAEL Y. KIM            24039960
ERICHA RAMSEY BROWN        24051952
EDUARDO R. GARZA           24120843

**THE MICHAEL KIM LAW FIRM, PLLC**
4236 W. Lovers Lane
Dallas, Texas 75209
(214) 357-7533
(214) 357-7531 Facsimile
mkim@mkimlegal.com
erbrown@mkimlegal.com
egarza@mkimlegal.com

ATTORNEYS FOR PLAINTIFF

## I.
## <u>REPLY[1]</u>

I. **Plaintiff is Entitled to Liquidated Damages.**

A. <u>Defendants' Evidence Presented in Their Response is Not "Substantial" Evidence of Good Faith When All Evidence Introduced at Trial is Considered.</u>

1.      In support of their objection to Plaintiff's motion for liquidated damages, Mary Kay Inc. ("Mary Kay") and the Mary Kay Foundation (the "Foundation"), Defendants in the above-styled and numbered cause (Mary Kay and the Foundation are collectively referred to herein as, "Defendants"), offer a summary of the "substantial" evidence presented at trial which allegedly supports their good faith. However, Defendants' summary ignores the remainder of the evidence produced at trial, including from its own witnesses, which controverts and/or disproves every piece of evidence identified in said summary.

2.      Defendants claim there is substantial evidence showing that Plaintiff was given "a second chance in a new position following her poor performance in 2018." However, Kelly Medley testified that she began her career with Defendants in the latter half of 2018 and immediately implemented significant restructuring of various departments.  Ms. Medley also testified that due to her restructuring, multiple positions, including Plaintiff's, would be eliminated and she chose to offer Plaintiff a lateral move to a new position at the Foundation because she believed Plaintiff's long history and experience at Mary Kay was valuable.

3.      Additionally, testimony elicited from Ms. Medley, Madeline Littrell, Carrie Adams, and Tine Boehlein contradicts Defendants' claim that Plaintiff was terminated due to performance issues, for which she was "coached" by her direct supervisor, Ms. Littrell, in weekly

---

[1] To the extent necessary, this reply and the legal arguments set forth herein, specifically or otherwise, are also intended to serve as Plaintiff's response to Defendants' Objections to Plaintiff's attorneys' fees, which Defendants filed in conjunction with Defendants' Response to Plaintiff's Motion to Enter Judgment.

meetings. Specifically, Plaintiff was never informed of any of the alleged complaints until the date of her termination. Defendants also had policies and procedures relating to discipline of employees and performance improvement plans, and none of those procedures were ever invoked for Plaintiff. On the contrary, Ms. Littrell and Ms. Medley commended Plaintiff for good performance on multiple occasions through the use of WOW Awards and personal correspondence all the way up until Plaintiff's FMLA leave. Ms. Littrell and Ms. Medley also testified that Seminar was an immensely important event for Defendants, the 2019 Seminar Conference was Ms. Littrell's first, the 2019 Seminar Conference was the first Seminar following the implementation of Ms. Medley's restructuring, and they were relying on Plaintiff's experience to ensure success at the Foundation's booth at the 2019 Seminar Conference.

4.     Furthermore, Plaintiff testified that Ms. Medley and Ms. Littrell set overly ambitious goals for the Foundation's booth at Seminar, these goals were not met, and Ms. Littrell angrily stated that someone was going to go down for the failure to meet said goals. Ms. Littrell also testified that Ms. Medley instructed her to create a performance tracking document which only listed negative job performance issues. This performance tracker could not have been made contemporaneously with the instances described therein because the first item on the list is Plaintiff's performance in 2018, prior to Ms. Littrell's arrival at Mary Kay and/or the Foundation. On the contrary, this performance tracker was created almost entirely during Plaintiff's FMLA leave as Ms. Medley and/or Ms. Littrell documented instance after instance of any potential failures attributable to Plaintiff and/or her job performance.

5.     Upon her return to work, Plaintiff was not confronted about any of the alleged performance failures. Rather, Ms. Littrell compiled an extensive list of tasks and short deadlines

by which Plaintiff was expected to complete those tasks, something that Ms. Littrell admitted she did not even do for interns.

6.      At best there is only some evidence of good faith, which is insufficient to carry Defendant's "substantial burden" of demonstrating good faith. *See Stanton v. Jarvis Christian College*, 2020 WL 5269439, at *2 (E.D. Tex. 2020) (slip copy).

      B.      <u>The is no evidence that Defendants had reasonable grounds for believing their actions did not constitute retaliation under the FMLA.</u>

7.      None of the evidence cited in support of Defendants' claim that they had reasonable grounds for believing their actions did not violate the FMLA is relevant to retaliation. At best, the evidence cited is only relevant to Plaintiff's FMLA interference claim. Said evidence is also controverted by the remainder of the evidence in the record.

8.      For example, Ms. Medley testified that she was "forced" to send Plaintiff out on medical leave after learning that Plaintiff had been prescribed pain medication by her doctor, and the evidence at trial overwhelmingly showed that Plaintiff returned to work under vastly changed circumstances, projects were taken away from her, co-workers had become explicitly cold and distant, and she was excluded from team meetings.

9.      Furthermore, Plaintiff returned to work in a walking boot, yet she was assigned labor-intensive tasks which required her to walk Defendants' multi-floor office building for several hours, which ultimately caused an over-compensation injury to her hip for which she sought medical attention. Plaintiff was given new work restrictions by her physician as a result, yet when she returned to the office, she was terminated less than an hour after submitting her new restrictions.

10.      Most importantly, Ms. Boehlein, Plaintiff's Human Resources representative and supposed advocate, testified she was aware that Defendants' policies mandated an investigation

when an employee reports retaliation or harassment, Plaintiff informed her that she felt she was being punished for taking FMLA leave, and she did nothing to investigate Plaintiff's report. The Fifth Circuit has held that such a lack of inquiry or investigation <u>calls into question a claim of reasonable reliance</u>.  *See e.g. Ion v. Chevron*, 731 F.3d 379, 395 (5th Cir. 2013) (for the proposition that failing to conduct any type of inquiry into alleged co-worker statements "calls into doubt [defendant's] reasonable reliance and good faith on [the co-worker's] statements").

11.     Accordingly, Defendants have failed to demonstrate reasonable grounds for believing that their actions complied with the FMLA's retaliation prohibition.

C.     <u>Even taking the arguments in Defendants' response as true, the Court should still exercise the discretion granted to it by the FMLA and award liquidated damages.</u>

12.     As briefed in Plaintiff's Motion to Enter Judgment, even if there is substantial evidence of good faith on Defendants' part, the Court maintains discretion to award liquidated damages for their violation of the FMLA, which "must be exercised consistently with the <u>strong presumption</u> under the statute <u>in favor of doubling</u>."  *See Nero v. Indus. Molding Corp.*, 167 F.3d 921, 928 (5th Cir. 1999) (emphasis added).

13.     Defendants failed to provide this Court with anything other than pretextual reasons for terminating Plaintiff's employment. Accordingly, an award of liquidated damages in this case is proper and consistent with the remedies provided by statute for violation of the FMLA.

II.    **Plaintiff's Attorneys' Fees are Reasonable.** [2]

A.    An award for all of Plaintiff's attorneys' fees is proper under federal law because all of Plaintiff's claims involve a core of common facts.

14.    In addition to analyzing Plaintiff's claim for attorneys' fees under *Hensley*, Defendants would incorrectly have this Court further analyze Plaintiff's motion under an additional legal standard for intermingling of fees that focuses on whether "discrete legal services advance both a recoverable and unrecoverable claim."

15.    Defendants cite to *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 298 (5th Cir. 2007), and *Tony Gullo Motors L L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006), for the proposition that "[i]ntertwined facts do not make [] fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated."

16.    However, in both *Wilkinson* and *Chapa*, the party seeking an award of fees prevailed on a claim under Texas law, and the 5th Circuit has long held that "[a] fee award is governed by the same law that serves as the rule of decision for the substantive issues in the case." *Mathis v. Exxon Corp.*, 302 D.3d 448, 461 (5th Cir. 2002) (citing *Kona Tech. Corp v. S. Pac. Transp. Co.*, 225 F.3d 595, 614 (5th Cir. 2000).

17.    In the present case, Plaintiff has prevailed on her claim of retaliation under the FMLA and seeks an award of attorneys' fees pursuant to 29 U.S.C.A. § 2617(a)(3).  Therefore,

---

[2] For the reasons set forth in this section of Plaintiff's Reply, Plaintiff would show that Defendants' Objections 1, 2, and 3 should be overruled, as the claims asserted by Plaintiff, their development, and presentation at trial were interrelated and inextricably intertwined.  Moreover, Plaintiff would demonstrate to the Court that the vast majority of Plaintiff's responses to Defendants' respective motions for summary judgment dealt with Plaintiff's FMLA claim, which required a significant amount of attorney time.  Further, Plaintiff would demonstrate that the billing entries made were descriptive and detailed, to the extent Defendants contend entries cannot be deciphered between claims, entries related to drafting discovery requests and responses, depositions, responses to motions for summary judgment and trial of claims, such related to all of Plaintiff's claims, either in their prosecution or defense.

when considering the reasonableness of the fees requested in Plaintiff's motion, this Court need only consider the two crucial questions identified in *Hensley*.

18.     As to the first question, the Court should find that Plaintiff's claims involve a common core of facts which makes it difficult to divide the hours expended on a claim-by-claim basis.

19.     In this regard, Defendants' arguments advanced in their response fail because they focus entirely on legal elements of Plaintiff's prima facie claims while ignoring the factual and legal questions raised by their defenses.

20.     Defendants argue that Plaintiff's FLSA claim required evidence of her "job duties and responsibilities and the process to classify her last position as an exempt position," and that such facts are irrelevant to her FMLA retaliation claim. However, such argument completely ignores Defendants' primary defense to Plaintiff's FMLA claims, which is summarized in page 4 of Defendants' response, that Plaintiff "was terminated for her failure to satisfactorily perform her job duties and responsibilities."

21.     At every stage of this litigation, Defendants asserted that they had a legitimate, non-prohibited reason for terminating Plaintiff's employment: poor job performance. Such a defense automatically placed Plaintiff's job duties and responsibilities at issue, and in fact raised numerous fact questions relating to her job description, what communications were had relating to Plaintiff's job description and Defendants' expectations, and how exactly Plaintiff's job performance failed to meet her job description and Defendants' expectations.

22.     Furthermore, in support of their defense to Plaintiff's FMLA claims, Defendants introduced evidence at trial in the hope of demonstrating, among other things, that: Plaintiff failed to satisfactorily perform her job duties and responsibilities in her old position; Defendants offered

Plaintiff a lateral move to her most recent position as a "second chance;" Plaintiff's job duties and responsibilities in her new position were similar to those of her old position; Defendants communicated with Plaintiff about her job duties and responsibilities in the new position; Plaintiff almost immediately failed to satisfactorily perform those job duties and responsibilities; Ms. Littrell's conduct upon Plaintiff's return to work from FMLA leave was reasonable in light of Plaintiff's job duties and responsibilities; and Ms. Littrell did not ask Plaintiff to do anything that was not already in her job description.

23.     Accordingly, the Court should find that all of Plaintiff's claims involved a core of common facts and proceed to the second *Hensley* consideration.  In this regard, the Court should find that the fees sought are reasonable in light of the degree of success Plaintiff obtained at trial. According to the Supreme Court, "a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983).

24.     In this case, Plaintiff's relief is substantial, as she has recovered $137,100.00 in compensatory damages and she has petitioned the Court for a like amount in liquidated damages. *See Pineda v. JTCH Apartments LLC*, 126 F.Supp.3d 797, 806 (5th Cir. 2015) (quoting *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 395 (5th Cir. 2003) ("the Fifth Circuit has made clear, 'the amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded.'").

25.     Accordingly, all of Plaintiff's attorneys' fees ($108,950.00) may be properly awarded in this case as all of Plaintiff's claims arose out of a common core of facts and the amount of fees at issue is not disproportionate to the degree of success Plaintiff obtained.

B.    Plaintiff's counsel has exercised billing judgment in this case. [3]

      i.    *Plaintiff's counsel billed at the substantially reduced rate of $100/hour for all attorneys.*

26.    Defendants' arguments regarding insufficient writing off of time, redundant time entries, and clerical work all ignore that fact that the fees sought are based on a <u>reduced hourly rate of $100/hour for all of the attorneys at Plaintiff's retained law firm</u>, which is substantially lower than the rates ordinarily charged by those attorneys, and other attorneys, in Dallas County, Texas of similar experience and qualifications.

27.    As demonstrated in Plaintiff's motion, had Plaintiff's counsel billed at ordinary rates, the total fees incurred would total approximately $382,262.50. The difference between the fees sought at the reduced rate and the full hourly rate is $273,312.50, which more than demonstrates an exercise of billing judgment.

      ii.    *It was reasonable for Plaintiff to have three attorneys attending trial when Defendants had four attorneys attending and assisting with trial on their behalf.*

28.    Defendants' claim that only one attorney represented them at trial is an egregious misrepresentation of their litigation team. As the Court observed, Defendants' lead counsel Simon D. Whiting was assisted at the jury charge conference by Katherine Elrich, both of whom advised the Court that Ms. Elrich would be handling such conference.  Mr. Whiting also assisted during the time that Ms. Elrich was presenting argument to the Court on behalf of Defendants.  Further,

---

[3] For the reasons set forth in this section of Plaintiff's Reply, Plaintiff would show that Defendants' Objections 3, 4, and 5 should be overruled.  In this regard, all attorneys' fees and clerical time were reasonable given the rate charged by Plaintiff's counsel being far less than the average within this District. Additionally, based upon the fact that Plaintiff did not attempt to collect the reasonable rate of her attorneys' fees, there has already been a significant reduction in the fee amount, more than double that which is sought. Such weighs against Defendants' argument for reduction for block billing or reasonableness of the fees incurred.  In this same regard, "[m]ost courts that have addressed block billing have concluded that denying all block-billed attorney's fees is not appropriate.  Instead, many courts reviewing block-billed time entries have performed a percentage reduction. . . ." *Bramlett v. Med. Protective Co. of Fort Wayne, Inc.*, 2010 WL 3294248, at *3—4 (N.D. Tex. Aug. 20, 2010) (citations omitted).  As demonstrated, Plaintiff's billing rate has already demonstrated a large percentage reduction for attorneys' fees.

as the Court is also aware, Defendants' in-house counsel, Beth Jaynes, also attended and observed trial in its entirety, sat at Defendants' counsel tables, assisted Mr. Whiting in presenting evidence to the jury (i.e. operating power point presentations and locating evidence), as well as provided visible consultation to Mr. Whiting through oral and written communications throughout trial. Furthermore, Mary Kay's Chief Legal Officer, Julia Simon, attended and observed the trial in its entirety.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon consideration or hearing, the Court enter judgment against Defendants, jointly and severally, in the principal sum of $137,100.00, liquidated damages in the sum of $137,100.00, pre-judgment interest on the total damages award at a rate of 4.72% annually, post-judgment interest on the final judgment, from the entry of judgment until satisfaction of the judgment, at a rate of 4.72% annually, together with Plaintiff's costs,[4] attorneys' fees, and expenses in the sum that the Court awards pursuant to the request made herein. Plaintiff also prays that the Court grant her such other and further relief, both general and specific, in law and in equity, to which she may show herself to be justly entitled.

---

[4] Plaintiff concedes that costs should not be awarded with regard to Defendants' objection to the claimed costs for (1) expert fees; (2) Delivery/Postage/Mailing fees; (3) parking fees; and (4) the mediation fee.  Accordingly, after deduction of such costs, the Court should award taxable costs in the amount of **$11,221.61**.

Respectfully submitted,

/s/ *Ericha R. Brown*
Michael Y. Kim
State Bar No. 24039960
mkim@mkimlegal.com
Ericha Ramsey Brown
State Bar No. 24051952
erbrown@mkimlegal.com
Eduardo R. Garza
State Bar No. 24120843
egarza@mkimlegal.com

**THE MICHAEL KIM LAW FIRM, PLLC**
4236 W. Lovers Lane
Dallas, Texas 75209
(214) 357-7533
(214) 357-7531 Facsimile

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was forwarded via electronic service and/or electronic mail to the following counsel of record on this, the 14th day of June 2023:

Simon D. Whiting
Cobb Martinez Woodward
1700 Pacific Ave.
Suite 3100
Dallas, Texas 75201
swhiting@cobbmartinez.com

Jill Herz
Jill Herz, Attorney at Law, P.C.
12240 Inwood Rd., Suite 400
Dallas, Texas 75244
service@jillherz.com

/s/ *Ericha R. Brown*
Ericha Ramsey Brown